**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAI CARR,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF ESSEX, ARMANDO B. FONTOURA, Individually and in his official capacity as Sheriff of Essex County, JOHN GONCALVES, Individually and in his official capacity as Undersheriff of Essex County, JACQUELINE JONES, Individually and in her official capacity as Deputy Director of Human Resources of Essex County, and JOHN/JANES DOES 1-10,<br><br>    Defendants. | Civil Action No. 20-20587 (JXN) (JSA)<br><br><br><br>**REPORT AND RECOMMENDATION** |

**JESSICA S. ALLEN, U.S.M.J.**

      Before the Court is the motion of Defendants, the County of Essex, Armando B. Fontoura, John Goncalves, and Jacqueline Jones (collectively "Defendants"), to enforce a settlement, direct Plaintiff Shai Carr to execute the form of settlement agreement prepared by Defendants, and for an award of attorneys' fees and costs. (ECF Nos. 90-91, 93-94). Plaintiff opposes the motion. (ECF No. 92). The Honorable Julien Xavier Neals, U.S.D.J. referred the motion to the Undersigned for a Report and Recommendation. The Court held an evidentiary hearing on July 17, 2025. Having considered the parties' written submissions and the testimony and exhibits proffered at the evidentiary hearing, and for the reasons set forth below, and for good cause shown, it is respectfully recommended that the motion to enforce settlement be **GRANTED IN PART**

and the request for attorneys' fees and costs be **DENIED**.

I.     **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed this employment and gender discrimination case on December 30, 2020. Her Complaint alleges the following pertinent facts. Plaintiff is a sworn officer in the Essex County Sheriff's Office ("ECSO"). (ECF No. 1 ¶¶ 1, 10, 19). At all relevant times, the County of Essex employed the named individual defendants: Fontoura as Essex County Sheriff, Goncalves as an Undersheriff, and Jones as Deputy Director of Human Resources. (*Id.*, ¶¶ 2-6). Plaintiff claims that Jones targeted her based on personal animosity and political associations, and that Fontoura helped her harass Plaintiff by singling out Plaintiff for disparate workplace treatment. (*Id.*, ¶¶ 18-19, 42).

On June 3, 2017, Plaintiff was ordered to report to the ECSO's Internal Affairs Division. (*Id.*, ¶ 40). At the time, Fontoura was a Detective in the ECSO's Detective Bureau. (*Id.*, ¶ 12). Internal Affairs advised Plaintiff that she had been transferred to the ECSO's Transportation Division, which Plaintiff learned was ordered by Fontoura to allegedly prevent her from speaking to elected officials at ECSO headquarters. (*Id.*, ¶ 41). The transfer departed from standard ECSO practice in several ways, among them that Plaintiff immediately lost her detective stipend even though she still held the rank of Detective. (*Id.*, ¶¶ 41-42, & 49).

On December 22, 2017, Plaintiff's transfer became permanent, and she was formally stripped of her rank as Detective. (*Id.*, ¶ 48). Plaintiff continued to be disparately treated over the next two years, during which she was repeatedly targeted by Goncalves. (*Id.*, ¶¶ 53-57). On September 9, 2019, Plaintiff learned that Goncalves ordered another officer to spy on her and report back to him. (*Id.*, ¶ 58). Goncalves instructed the officer not to tell anyone that he was surveilling Plaintiff. (*Id.*) These orders violated ECSO regulations, which prohibit officers not

assigned to Internal Affairs from conducting such investigations. (*Id.*) The officer eventually reported Goncalves' orders to Internal Affairs. (*Id.*)

On September 11, 2019, Plaintiff submitted an internal memorandum (commonly referred to as a "151") to ECSO leadership, setting forth intimidation and harassment she had suffered at Defendants' hands. (*Id.*, ¶ 60). Plaintiff received no response until January 28, 2020, when the president of her union personally delivered a copy of her 151 to the Essex County Inspector General. (*Id.*, ¶¶ 61-62). The Inspector General's subsequent investigation "found no violation of a County policy." (*Id.*, ¶ 64). Plaintiff then filed a complaint with the Equal Opportunity Employment Commission, which issued a Right to Sue letter on December 7, 2020. (*Id.*, ¶ 68).

This action followed. (*Id.*) Plaintiff's Complaint alleges nine counts: (1) violation of her First Amendment right to freedom of association; (2) First Amendment retaliation; (3) a hostile work environment under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; (4) illegal limitation, segregation, and/or classification in violation of 42 U.S.C. § 2000e-2(a)(2); (5) impermissible consideration of race, color, and/or gender in employment practices in violation of 42 U.S.C. § 2000e-2(m); (6) violation of the Fourteenth Amendment's Equal Protection Clause; (7) violation of 42 U.S.C. § 1983; (8) violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq.*; and (9) violation of the New Jersey Civil Rights Act, N.J.S.A. §§ 10:6-2(c), *et seq.*. (*Id.*, ¶¶ 69-107).

After filing this lawsuit, Plaintiff submitted three additional 151s (collectively the "Post-Suit 151s"). Because their contents pertain to the instant motion, the Court briefly addresses the relevant facts set forth in each Post-Suit 151.

First, on June 28, 2023, Plaintiff reported an incident where the ECSO failed to provide backup when she requested assistance during an altercation with a suspect. (ECF No. 92-2). The

3

151 characterized the incident as "compounding" a pattern "of mismanagement and a lack of accountability" within the ECSO.  (*Id.*)  She explicitly referenced "previous intimidating tactics by ECSO" and wrote that she was "terrified to come to work unsure if she can or ever will be afforded the same protections and safety as [her] fellow officers."  (*Id.*)

Second, on December 11, 2023, Plaintiff reported another incident, where her "name was placed on a rather large desk calendar in plain[]view for all to see," revealing to passersby that she had "a Municipal Court trial date" and "allowing for continued suffering from ridicule and embarrassment from [her] peers."  (ECF No. 92-3).  Plaintiff described this incident as another example of the "harassment that continues to feed" a pattern of "selective treatment towards [her]." (*Id.*)  She further wrote, "[t]his is not the first time[] that I have [experienced] some questionable integrity situations occur[ing] within Internal Affairs."  (*Id.*)

And third, on April 30, 2024, Plaintiff again complained of "the constant and inconsistent differential/biased treatment exuding from the [ECSO]."  (ECF No. 92-4).  She noted "every 151 that [she] ha[s] submitted for proper investigation has been unnecessarily delayed and not completed in a prompt manner[,] directly threatening the integrity of each investigation."  (*Id.*)  Specifically, the ECSO refused her request for discovery concerning a separate 151 but gave the same information to the Essex County Counsel.  (*Id.*)  She wrote, "[i]t is very alarming that there are different procedures/rules depending on who you are and/or who you know.  Organizational practices should ensure that all employees . . . be held accountable as required."  (*Id.*)

After completing discovery in this action, the parties participated in private mediation on May 1, 2024.  (ECF No. 79).  It is undisputed that during mediation, the parties reached a settlement in principle and executed a written "Binding Settlement Term Sheet" ("Term Sheet").  (ECF No. 91-1).  Plaintiff and Defendants' representative both signed the Term Sheet.  (*Id.*)  As

detailed in the Term Sheet, the parties agreed to several terms. The Court recites only the following terms relevant to deciding the instant motion to enforce: Defendants "will pay Plaintiff" a sum certain in damages and attorneys' fees and costs "in full resolution of this matter"[1] (*id.*, ¶ 1), with the attorneys' fees plus at least half of the damages due "within sixty (60) days from the parties' execution of a final written settlement agreement" (*id.*, ¶¶ 3-4). And the parties agreed to "sign a formal final written settlement agreement containing a release." (*Id.*, ¶ 6).

On May 8, 2024, the parties jointly advised the Undersigned "that they reached a settlement of this matter during" mediation and were "working to finalize a written settlement agreement." (ECF No. 81). However, on September 12, 2024, the parties submitted a joint letter indicating that they "reached an impasse on the final terms of the Stipulation of Settlement and General Release." (ECF No. 84). Thereafter, despite court intervention and a renewed effort to return to mediation, the impasse remained. Specifically, the parties continued to dispute: (1) whether transferring Plaintiff to the Detective Bureau and restoring Plaintiff's Detective badge was part of the parties' settlement; and (2) whether Plaintiff agreed to release the Post-Suit 151s as part of the settlement or they were understood to be carved out of the general release. (ECF No. 88).

Unable to resolve this dispute, the Court granted Defendants leave to file the instant motion to enforce settlement on October 28, 2024. (ECF No. 89).

## II.   THE PARTIES' POSITIONS

Defendants ask the Court to enforce the Term Sheet and compel Plaintiff to sign the proposed form of settlement agreement (ECF No. 91-5) that defense counsel circulated to Plaintiff's counsel following mediation. (ECF Nos. 91 at 8, 91-1, & 91-5). They maintain that "Plaintiff unquestionably confirmed" that the Term Sheet encompassed the parties' full agreement

---

[1] Since the monetary settlement amount is confidential, the Court does not include the specific amount detailed in the Term Sheet.

when she signed it "during the mediation" (ECF No. 91 at 9), as nothing in the Term Sheet suggests that the contemplated "release" would be anything other than a general release of all claims (ECF No. 94 at 4-6). If Plaintiff had truly wished to carve out the Post-Suit 151s and have her Detective status restored as a term of the settlement, she should have ensured that the Term Sheet reflected these matters before she signed it. (ECF No. 91 at 11-12). To support their position, Defendants rely on a declaration from their attorney Melissa A. Salimbene, Esq., who represents that, during the mediation, Defendants "explicitly rejected" Plaintiff's request to "be transferred back to the Detective Bureau," after which Plaintiff "never raised" the issue "again during the remainder of the mediation." (ECF No. 90-3 ¶ 4). Salimbene further declares that "the parties never discussed" excluding the Post-Suit 151s "from Plaintiff's release of Defendants." (*Id.*, ¶ 7).

Plaintiff counters that the parties did not reach a meeting of the minds at mediation. (ECF No. 92 at 5). In her supporting declaration, Plaintiff denies that Defendants "specifically" refused to restore her rank of Detective. (ECF No. 92-1 at ¶ 8). Instead, she claims that she explicitly raised this issue with the mediator, who told Plaintiff "that she would not bring the issue to the defendants." (*Id.*) Plaintiff further contends that the Post-Suit 151s "ha[ve] nothing to do with [this] lawsuit, and that" the ECSO "should not get a free pass for failing in [their] duties simply because [she] settled a lawsuit that ha[ve] nothing to do with" this case. (*Id.*, ¶¶ 5-6; ECF No. 92 at 2-3). Yet, in her declaration, Plaintiff continues that "[t]hese issues were the crux of my lawsuit" but curiously she "never agreed to waive them." (ECF No. 92-1 at ¶ 10). In her opposition brief, Plaintiff adds that she opposed certain provisions in the proposed agreement following mediation. (ECF No. 92 at 4-5).

Plaintiff's attorney circulated a redlined version of the proposed agreement on August 27, 2024, which included language reinstating Plaintiff to her Detective status as additional

6

consideration (*see* ECF No. 91-4 ¶ 1(a)(ii)) and edits to the General Release carving out the Post-Suit 151s (*see id.*, ¶ 8).  Based on those redline revisions, Plaintiff submits that although the Term Sheet itself is binding, "[t]he terms of the [proposed settlement agreement's] General Release have not been agreed upon" and consequently are not binding.[2]  (ECF No. 92 at 6).

### III. <u>EVIDENTIARY HEARING</u>

After reviewing the parties' written submissions, the Court held an evidentiary hearing to address Plaintiff's position that the Term Sheet did not memorialize the two additional matters—i.e., restoration of her Detective badge with stipend and the carving out of the three Post-Suit 151s from the General Release.[3]  The following relevant testimony was adduced from the only two witnesses called to testify—Defendants' representative, Essex County Counsel Jerome St. John, Esq., and Plaintiff.

Defendants' representative acknowledged signing the Term Sheet at the mediation session (ECF No. 119 13:15-14:3) and testified that the Term Sheet "reflect[s] all of the settlement terms to which the parties agree[d] during the mediation" (*id.* 14:10-12, 23:20-23).  He also testified that the parties did not agree to any settlement terms "that are not listed on th[e] [T]erm [S]heet." (*Id.* 14:13-15).  He further testified that Defendants never agreed "at any time" during mediation "to make [P]laintiff a detective in connection with settling this matter." (*Id.* 14:24-15:2).  Moreover, he testified that Defendants never agreed during mediation to "any carve-outs to the release." (*Id.* 15:18-20).  Particularly, he testified that Defendants never agreed during mediation "to carve out"

---

[2] Despite Plaintiff's characterization of the Detective badge as a "carve out" of the General Release, this Court's review of Plaintiff's proposed redlined version confirms that she sought to include restoration of her Detective badge and stipend as new additional consideration for releasing her claims not a term to be carved out of the General Release.  (*Compare* ECF No. 91-4 at ¶ 1(a)(ii), *with* ¶ 8).

[3] Motions to enforce settlement require a hearing "to establish the facts unless the facts are uncontroverted." *Hidalgo v. City of Atlantic City*, 2016 U.S. Dist. LEXIS 58388, at *2 n.2 (D.N.J. May 2, 2016).

7

the Post-Suit 151s. (*Id.* 16:5-12). Rather, he understood "at the mediation that [P]laintiff was releasing any and all claims she had against" Defendants (*id.* 16:13-16), and that the parties had reached a "full and final settlement of all claims between them" (*id.* 16:17-20).

During her testimony, Plaintiff also acknowledged that the parties "reached a settlement during the mediation" (*id.* 43:9-11), and that "those settlement terms were memorialized in writing" (*id.* 43:12-14; *see* exh. D-1). Plaintiff further testified to signing the Term Sheet at mediation (*id.* 44:7-14) and that she reviewed the Term Sheet with her attorney before signing (*id.* 44:17-18, 44:25-45:2). Plaintiff was asked whether she and Defendants "agreed to" any terms "at the mediation that [are] not memorialized on" the Term Sheet. (*Id.* 45:13-15). Plaintiff responded, "I don't think so," before adding that she did not believe that the parties "agree[d] to something at mediation that somehow didn't get written down on that term sheet." (*Id.* 45:16-21). Specifically, with regards to the additional terms, the following colloquy occurred between Plaintiff and Defendants' attorney:

> Q. At the mediation did the defendants ever agree that you would be made a detective in connection with the settlement of this matter?
>
> A. No.
>
> Q. The [Term Sheet] states at number six that the parties would sign a formal written settlement agreement containing a release; is that correct?
>
> A. Yes.
>
> Q. The term sheet does not contain any language that states the parties agreed to any carve-outs from that release; is that correct?
>
> A. Yes.
>
> Q. At the mediation, did the defendants provide you with any carve-outs to the release?

8

> A. No.
>
> Q. Are you, as part of your opposition to [D]efendants' motion, seeking to alter or change any of the settlement terms that are contained in that [T]erm [S]heet?
>
> A. No.

(*Id.* 47:21-48:14).

At the conclusion of the hearing, the parties confirmed that they did not intend to submit post-hearing briefs. (*Id.* 72:9-16). The Court reserved decision. (*Id.* 72:18-19).

## IV. <u>LEGAL STANDARD</u>

Federal courts possess "inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein." *Fox v. Consol. Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984). Motions to enforce settlement are decided under the same standard as motions for summary judgment. *Tiernan v. Devoe*, 923 F.2d 1024, 1032 (3d Cir. 1991). Accordingly, the court will "review the record to determine whether there exists a genuine dispute of material fact." *Zacharczuk v. Rego Trading, Inc.*, 2022 U.S. Dist. LEXIS 170406, at *5 (D.N.J. Aug. 30, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 169468 (D.N.J. Sept. 20, 2022). The court "must treat the non-moving party's assertions as true and will enforce [the] settlement only if the moving party is entitled to enforcement as a matter of law." *Lee v. Donald Nuckel & Co.*, 2022 U.S. Dist. LEXIS 181824, at *4 (D.N.J. Oct. 4, 2022).

"State law governs the construction and enforcement of settlement agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996). Thus, federal courts look to state contract law when construing and enforcing settlements. *See Prods. for Surgery, Inc. v. Shelhigh, Inc.*, 2008 U.S. Dist. LEXIS 4360, *4 (D.N.J. Jan. 22, 2008). New Jersey has a clear public policy in favor of enforcing settlements absent "clear and convincing

9

proof" of fraud or other similarly "compelling circumstances." *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (citations omitted).  Therefore, this Court "will strain to give effect to the terms of a settlement wherever possible." *Arias v. Fam. First Funding, LLC*, 2025 U.S. Dist. LEXIS 135353, at *20 (D.N.J. July 1, 2025) (citation omitted).

**V.    DISCUSSION**

Importantly, all parties agree that they formed a binding settlement during mediation on May 1, 2024, when Plaintiff and Defendant's representative signed the Term Sheet.  (ECF No. 91 at 9; ECF No. 92 at 6).  Likewise, all parties agree that the Term Sheet requires them to "sign a formal final written settlement agreement containing a release."  (ECF No. 91-1 ¶ 6).  The sole contract construction issue is whether restoring Plaintiff's Detective badge and carving out the Post-Suit 151s from the General Release provision are properly included as terms of the parties' settlement.

Like all contracts, settlement agreements are "enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms." *United States v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997).  "A contracting party is bound by the apparent intention he or she outwardly manifests to the other party." *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992).  This standard is objective: "[i]t is immaterial that he or she has a different, secret intention from that outwardly manifested."  *Id.*   This principle is especially germane to settlement agreements, as parties negotiating settlement may discuss "wide-ranging arguments and ideas . . . for hours before they are winnowed down to an agreement with particular terms." *Zacharczuk*, 2022 U.S. Dist. LEXIS 170406, at *8-9.

Courts may discern the parties' objective intent using "credible evidence – such as the documents and the conduct of the parties – and permissible inferences therefrom." *Lightman*, 988

10

F. Supp. at 460.  In particular, the court may consider whether the party challenging the agreement "had an opportunity to discuss" it "with counsel" and "fully understood the terms of the agreement" before accepting it.  *E.g., Arias*, 2025 U.S. Dist. LEXIS 135353, at *40 n.13.  "Where a party to an agreement-in-principle" subsequently and "suddenly changes its mind and refuses to execute the written contract" for reasons not previously conveyed, "the court must enforce the" agreement-in-principle.  *Lightman*, 988 F. Supp. at 459.

Courts will not set aside a settlement if a party failed to contemporaneously "make it known" that the unexpressed term "was a condition to settling."  *Fogarty v. Household Fin. Corp. III*, 2018 U.S. Dist. LEXIS 143551, at *13 (D.N.J. June 28, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 143187 (D.N.J. Aug. 22, 2018).  In other words, "a party [who] views a term as essential to a settlement" should affirmatively "take care to express that term" before agreeing to the settlement.  *Arias*, 2025 U.S. Dist. LEXIS 135353, at *27.  If it fails to do so, any retrospective "second thoughts are entitled to absolutely no weight" should the opposing side subsequently move to enforce the agreement.  *Id.* (quoting *Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils.*, 206 N.J. Super. 523, 530 (App. Div. 1985)).

Applying these principles, the Court finds Plaintiff's position unpersuasive.  As the non-moving party to the instant motion, Plaintiff is entitled to "all reasonable inferences in [her] favor." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).  Consequently, the Court accepts arguendo that the mediator declined to convey Plaintiff's demand to restore her Detective's badge to Defendants.  (ECF No. 92-1 ¶ 8).  However, even considering Plaintiff's own version of events, the Court does not find, based on the present record, that there exists any genuine issue of material fact.  Specifically, the Court finds that she still entered into a settlement as memorialized by the Term Sheet, which she acknowledged is binding.  (ECF No. 92-6).

11

Indeed, during the evidentiary hearing, she testified to signing the Term Sheet and acknowledged that it binds all parties. (ECF No. 92 at 6; ECF No. 119 44:4-14, 48:15-16). Plaintiff discussed the Term Sheet with her attorney during the mediation session and signed it after her attorney answered her questions. (ECF No. 119 44:18-45:2). Likewise, Plaintiff acknowledges that Defendants never agreed that she would be made a detective in connection with the settlement nor agreed to "any carve-outs to the release" before she signed the Term Sheet. (*Id.* 47:21-48:14). The Court finds no sign that Plaintiff outwardly manifested anything but full acceptance of a Term Sheet containing no carve-outs or additional consideration for releasing her claims. To the extent she relies on her subsequent redlining of Defendants' proposed settlement agreement to include restoration of her Detective badge and a stipend as further consideration and carving out the Post-Suit 151s from the General Release, those edits occurred after Plaintiff signed the Term Sheet. (ECF No. 91-4). The Court rejects them as grounds to retroactively second-guess her objective intent or find that she did not intend to waive these matters.

The Court finds Plaintiff's attempt to separate the Post-Suit 151s from her Complaint equally unavailing. She correctly observes that no individual Defendants are named in the Post-Suit 151s. (ECF No. 92 at 2-3). However, all three 151s allege a continued pattern of disparate treatment, intimidation, and other improper conduct in the ECSO's internal affairs process, where the ECSO has consistently failed to honor the procedural rights to which Plaintiff is entitled as a sheriff's officer. (ECF Nos. 92-2 to -4). These allegations arise from the same pattern of disparate treatment and harassment as the incidents described in the Complaint, which likewise claims that Plaintiff "is the long-time victim of ongoing harassment and discrimination" within the ECSO. (ECF No. 1 ¶ 11). Plaintiff submitted these 151s after filing the Complaint, and the Court construes them simply as evidence that the pattern alleged in the Complaint continued post-suit. The Court's

findings are bolstered by Plaintiff's supporting declaration wherein she explained that the "151s" and "detective status" were "the crux of" her lawsuit. (ECF No. 92-1 ¶ 9).

But even if the Court accepts that the Post-Suit 151s' allegations are factually distinct from those in the Complaint, Plaintiff does not dispute Defendants' account that "the parties never discussed" carving out the Post-Suit 151s from the settlement's release. (ECF No. 90-3 ¶ 7). And as indicated previously, Plaintiff testified at the evidentiary hearing that Defendants did not agree to any carve-outs before she signed the Term Sheet. (ECF No. 119 48:8-10). If she wanted to carve out the Post-Suit 151s from the release, she had ample opportunity to discuss the point with her attorney before agreeing to sign the Term Sheet. (*Id.* 44:18-45:2). Again, whether Plaintiff subjectively intended to pursue the Post-Suit 151s and/or restoration of her Detective badge, she was obligated to affirmatively take care to express these terms during the mediation before signing the binding Term Sheet. Thus, the Court finds that by signing a Term Sheet contemplating "full resolution of this matter," Plaintiff outwardly manifested an intent to release Defendants from further liability of all claims that she asserted or could have asserted in her Complaint. (ECF No. 91-1 ¶ 1). In short, the Court finds restoration of the Detective badge with a stipend and Post-Suit 151s were not material terms and thus are not to be enforced as part of the settlement reached by the parties at the mediation. Accordingly, in light of the foregoing, the Court finds Defendants are entitled as a matter of law to enforce the settlement terms as set forth in the Term Sheet.

However, the Court does not recommend that Plaintiff be compelled to sign Defendants' specific form of the written settlement agreement and general release, which accompanies the instant motion as Docket Entry Number 91-5. *See Claridge House One Condo. Ass'n v. Beach Plum Props., L.L.C.*, 2006 N.J. Super. Unpub. LEXIS 585, at *14-15 (App. Div. Feb. 8, 2006) (declining to enforce a specific version of the parties' agreed-upon settlement terms as set forth in

13

"a list of proposals by [plaintiffs]" that defendant received but never accepted). The Term Sheet requires the parties to execute "*a* formal final written settlement agreement." (ECF No. 91-1 ¶ 6 (emphasis added)). At the same time, both sides agree that the Term Sheet itself reflects the full substantive terms of the settlement agreement. (ECF No. 119 14:10-15, 23:20-23, 45:16-21). Having already determined that the Detective badge and Post-Suit 151s are not material terms to be included in the settlement agreement and release, Defendants are essentially now asking this Court to weigh in on the implementation of the parties' settlement—that is, the *form* (not scope) of the settlement agreement and release to be signed. This request concerns a dispute over non-material terms relating to implementation of the settlement agreement, and thus, is not the proper subject of a motion to enforce. *See, e.g., Lee v. Donald Nuckel & Co*., 2022 WL 4976309, at *3 (D.N.J. Oct. 4, 2022); *McDonnell v. Engine Distribs*., 2007 WL 2814628, at *7-8 (D.N.J. Sept. 24, 2007). Such issues must be addressed and resolved between counsel.[4]

Finally, the Court addresses Defendants' request for an award of attorneys' fees and costs associated with bringing the instant motion. (ECF No. 91 at 13). As Defendants cite cases involving bad faith or vexatious conduct (*id.* at 14), the Court construes their request as an application under 28 U.S.C. § 1927, which permits an award for fees and costs when "[a]ny attorney . . . so multiplies the proceedings in any case unreasonably and vexatiously."[5] *Id.*

Attorneys' fees under Section 1927 rest within the broad discretion of the Court. *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*, 103 F.3d 294, 297 (3d Cir. 1996). Courts reserve this

---

[4] The Court notes that there are many ways that the parties can resolve such disputes. The Court, however, will not determine the most appropriate resolution but merely offers one suggestion. For example, the parties could meet and confer to address Plaintiff's suggested revisions to the "Confidentiality" and "Non-Disparagement" provisions. (*See* ECF No. 91-4 and ¶ 5).

[5] Defendants do not claim attorneys' fees and costs under the fee-shifting provision in their proposed settlement agreement. (*See* ECF No. 91 at 13-14; ECF No. 94 at 9).

sanction for "instances of a serious and studied disregard for the orderly process of justice." *Williams v. Giant Eagle Mkts., Inc.*, 883 F.2d 1184, 1191 (3d Cir. 1989) (citation omitted). Based on the parties' written submissions and the evidence adduced at the hearing, the Court does not find "willful bad faith on the part of" Plaintiff's counsel (or Plaintiff for that matter) in this case. *Id.* As previously stated, Plaintiff's reliance on her subjective beliefs and intent to include additional settlement terms do not warrant denying Defendants' motion to enforce a settlement. However, the Court does not find Plaintiff to have been motivated by bad faith. Therefore, the Court declines to recommend an award of costs and fees.

## VI.     CONCLUSION

For the reasons set forth above, it is respectfully recommended that the motion to enforce settlement be **GRANTED IN PART** and the request for attorneys' fees and costs be **DENIED**. The parties are advised that, pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and L. Civ. R. 72.1(c)(2), they have fourteen (14) days after receiving a copy of this Report and Recommendation to serve and file any specific written objections to the Honorable Julien Xavier Neals, U.S.D.J.

Further, it is **ORDERED** that the Clerk of Court shall **TERMINATE** the Motion to Enforce Settlement pending at Docket Entry Number 90 and activate this Report and Recommendation for the District Court's review.

s/Jessica S. Allen_____
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

**Dated: November 25, 2025**

cc:   Hon. Julien Xavier Neals, U.S.D.J.